# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**BRIAN HICKEY, SR.,**

    **Plaintiff,**

**vs.**                 **Case No: 8:12-CV-1527-T-30EAJ**

**CAROLYN W. COLVIN,[1]**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

   Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, Title 42, United States Code, Section 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act.[2]

   After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the Court recommends affirming the Commissioner's decision and dismissing this case.

   In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards.  See 42 U.S.C. § 405(g) (2006).  Substantial evidence is "such relevant

---

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security.  See Fed. R. Civ. P. 25(d).

[2] The district court referred this matter to the undersigned for consideration and a Report and Recommendation.  See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

evidence as a reasonable person might accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citation omitted).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On July 8, 2008, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of January 1, 2008 in both applications. (T 16, 171, 178, 208) Plaintiff's applications were denied initially and upon reconsideration. (T 16) A hearing was held on June 16, 2010. (T 16, 38) Fifty-two years old at the time of the hearing, Plaintiff has a high school education and two years of college with past relevant work as a security guard. (T 27, 40, 42, 44)

On June 29, 2010, the ALJ denied Plaintiff's applications. (T 29) The ALJ determined that Plaintiff's severe impairments included: disc disease of the cervical and lumbar spine; arthritis of the  knees, back, and neck; obesity; chronic obstructive pulmonary disease ("COPD"); and depression that potentially could be classified as dysthymia or bipolar II disorder. (T 18) However, the ALJ further found that these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 22) The ALJ concluded that Plaintiff had the

residual functional capacity ("RFC") to perform a limited range of light work subject to the limitations that: Plaintiff can stand or walk for six (6) hours in an eight-hour workday; sit for six (6) hours in an eight-hour workday with normal breaks; frequently crouch; and can frequently climb ramps or stairs but never ladders, ropes, or scaffolds. (T 23)  He can occasionally stoop, kneel, and crawl. (Id.)  Plaintiff is limited to jobs that can be performed while using a handheld assistive device during standing and walking. (Id.)  Also, Plaintiff must avoid concentrated exposure to extreme cold, heat, humidity, excessive vibration, hazards, and irritants such as fumes, odors, dust, and gases. (Id.) He is limited to work involving simple, routine, repetitive tasks, or unskilled work with Specific Vocational Preparation ("SVP") ratings of one (1) or two (2).[3] (Id.)

Although Plaintiff was unable to perform his past relevant work, the ALJ found Plaintiff capable of performing jobs available in significant numbers in the national economy such as cashier, office helper, and survey worker. (T 28)  Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period.  (T 29)   On May 10, 2012, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1-3)

The medical evidence and other evidence of record has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

Plaintiff contends that the ALJ failed to: accord proper weight to the opinion of treating physician Patrick F. Mulroy, M.D. ("Dr. Mulroy"); appropriately evaluate Plaintiff's credibility;

---

[3] SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles App. C (4th ed. rev. 1991), 1991 WL 688702.

3

consider the effect of Plaintiff's obesity on his other impairments; and pose a hypothetical to the vocational expert ("VE") that included all of Plaintiff's limitations.

A.      Plaintiff asserts that the ALJ erred in giving "little weight" to Dr. Mulroy's opinions while according "strong weight" to the opinion of a non-examining state agency consultant, Sharmishtha Desai, M.D. ("Dr. Desai").

The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) (citation omitted).  In particular, a treating physician's opinion must be given "substantial or considerable weight" unless there is good cause to disregard the opinion. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. Id. at 1179.

However, it is not improper for an ALJ to consider the reports of consulting physicians, as long as the opinion of the treating physician is accorded proper weight.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam).  If the ALJ articulates good cause for discrediting a treating physician's opinions, the ALJ is entitled to rely on a non-examining physician's opinion when it is consistent with the medical record and underlying clinical findings of the treating and examining physicians. Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742-43 (11th Cir. 2011) (per curiam) (unpublished).[4]  Ultimately, the ALJ is "free to reject the opinion of any physician

---

[4] While not binding precedent, unpublished opinions of the Eleventh Circuit Court of Appeals may be cited as persuasive authority.  11th Cir. R. 36-2.

when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations and internal quotation marks omitted).

The Commissioner, and not a claimant's physician, is responsible for determining whether a claimant is disabled under the Act. See Brown v. Comm'r of Soc. Sec., 442 F. App'x 507, 512 (11th Cir. 2011) (per curiam) (unpublished) (citations omitted). A physician's conclusion that a patient is disabled and unable to work is not medical opinion evidence that must be given special weight, even if offered by a treating physician. Lawton v. Comm'r of Soc. Sec., 431 F. App'x. 830, 834 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted). However, the ALJ still should consider the opinion. Id. (citation omitted).

Plaintiff argues the ALJ lacked good cause to discount Dr. Mulroy's opinion because a contradictory opinion from a non-examining state physician – Dr. Desai – does not constitute substantial evidence to override a treating physician's opinion. Plaintiff also asserts that while the RFC determination is reserved to the Commissioner, the ALJ must consider opinion evidence from treating physicians in formulating the RFC. Moreover, Plaintiff contends that: Dr. Desai did not have a complete medical record at the time of her March 2009 review; there are no contradictions in Dr. Mulroy's treatment notes; conservative treatment does not reflect upon the severity of a patient's condition; and it was improper for the ALJ to theorize that Dr. Mulroy's opinions may be influenced by sympathy for Plaintiff. Plaintiff also contends that the ALJ failed to consider certain factors in evaluating the medical opinion evidence.[5]

**1. Dr. Mulroy**

---

[5] The factors include examining relationship; treatment relationship; length of treatment relationship and frequency of examination; nature and extent of treatment relationship; supportability; consistency; and specialization. See 20 C.F.R. § 404.1527(c).

On January 31, 2008, Dr. Mulroy took over as Plaintiff's primary care physician and began managing Plaintiff's care for a variety of conditions including: COPD, cervical disc disease, degenerative arthritis of the lumbar spine, osteoporosis without fractures, goiter, thyroid dysfunction, bilateral shoulder arthritis, hypertension, and coronary artery disease. (T 422-23, 428, 524-26, 1460-63, 1466, 1773-74, 2149-50, 2247)

On July 1, 2008, Dr. Mulroy saw Plaintiff for lower back pain with radiating pain down the left leg. (T 428)  Dr. Mulroy noted that Plaintiff was experiencing arm weakness at times and that he had a remote history of herniated discs. (Id.)  He ordered additional testing including x-rays of the lumbar spine and an MRI of the neck and lumbar spine. (T 430)  On that date, Dr. Mulroy also wrote a letter advising that Plaintiff was restricted to lifting less than twenty (20) pounds due to the risk of compression fractures from osteoporosis.  (T 428)  Dr. Mulroy stated that it would be at least eighteen (18) to twenty-four (24) months before Plaintiff would be able to lift more than twenty (20) pounds regularly. (Id.)

Approximately one year later on July 14, 2009, Dr. Mulroy completed a Multiple Impairment Questionnaire for Plaintiff. (T 2175-82)  He listed shoulder pain, sciatica, COPD, and knee arthritis as Plaintiff's diagnoses and stated that Plaintiff's COPD, shoulder pain, knee pain, and sciatica could improve with continuing treatment. (T 2175)  However, he noted that COPD would be a "permanent problem." (Id.)  In describing the clinical findings that supported his conclusions, Dr. Mulroy listed a 2008 hospitalization in which Plaintiff was placed on mechanical ventilation, x-rays from May 8, 2009 showing degenerative arthritis in both shoulders, and an MRI from May 27, 2009 documenting stenosis of the cervical spine. (Id.)   Dr. Mulroy described Plaintiff's pain as "constant with movement" and rated it at nine (9) on a scale of ten (10). (T 2177)

6

He opined that Plaintiff could sit for less than one hour during an eight-hour workday; likewise, Plaintiff could stand or walk for no more than one hour total within an eight-hour workday. (Id.)  Plaintiff would need to get up and move around for fifteen (15) minutes after every thirty (30) minutes of sitting.  (T 2177-78) He could never lift or carry more than five (5) pounds, and Plaintiff had significant limitations in his ability to do repetitive reaching, handling, and fingering. (T 2178) He noted that a neurosurgeon did not recommend surgery and that Plaintiff's symptoms would likely increase in the work environment. (T 2179)   In a section providing a list of other potential limitations,[6] Dr. Mulroy checked every listed limitation as a problem except for "need to avoid noise" and "limited vision." (T 2181)  He concluded that Plaintiff was unable to carry out a full-time job that required activity on a sustained basis. (T 2180)

In December 2009, Dr. Mulroy listed Plaintiff's conditions and medications. (T 2247-48) He stated that Plaintiff was under the care of "multiple specialists" and  was not expected to ever be gainfully employed again. (T 20, 2247-48)

**2. Dr. Desai**

In March 2009, Dr. Desai reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment. (T 2056-63)   Dr. Desai noted that Plaintiff's hypertension and hypothyroidism were managed by medication. (T 2057) She observed that Plaintiff had been hospitalized in May 2008 for chest pain and that an echocardiogram showed mild left ventricular hypertrophy ("LVH")[7] with an ejection fraction[8] of fifty-five (55) percent to sixty (60)

---

[6] The other limitations included psychological limitations; need to avoid wetness; need to avoid fumes; need to avoid gases; need to avoid temperate extremes; no bending; no pulling; no kneeling; and no stooping. (T 2181)

[7] LVH is a thickening of the left ventricle, which is the heart's main pumping chamber. McKarnin ex rel. McKarnin v. Astrue, No. 07-0071-CV-W-REL-SSA, 2008 WL 625031, at *4 n.7

percent. (T 2058)  Another study in March 2009 showed that Plaintiff's left ventricle ejection fraction was at seventy (70) percent. (T 2063)  Plaintiff had been hospitalized in November 2008 for respiratory arrest due to respiratory failure from pulmonary edema and pneumonia requiring ventilatory support, but his condition improved with medication. (T 2058)  He was discharged in stable condition. (Id.)  A subsequent chest x-ray in February 2009 showed hyperaerated lungs without infiltrate or other abnormalities. (T 2063)

Dr. Desai discussed imaging studies of Plaintiff's back, including a lumbar MRI in July 2008 that revealed small central disc herniation at L5-S1 without significant stenosis and a CT of the cervical spine that showed multilevel degenerative disc disease. (T 2058)  She noted that Plaintiff's back problems were being treated conservatively. (Id.)  She found Plaintiff overweight at 246 pounds and 68 inches in height, but noted that Plaintiff showed full range of motion, intact neurology, and "no evidence of significant functional loss." (Id.)  As for Plaintiff's joints, Dr. Desai concluded that the record showed no evidence of instability, deformity, or significant functional loss of any major joint. (Id.)  Moreover, Plaintiff's medical conditions did not require frequent emergency room visits or hospitalizations. (Id.)

Dr. Desai opined that Plaintiff was capable of occasionally lifting and/or carrying twenty (20) pounds and frequently lifting and/or carrying ten (10) pounds.  (T 2057) He could stand and/or walk for six (6) hours in an eight-hour workday and sit for a total of six (6) hours during the workday. (Id.)  He could frequently crouch and frequently climb ramps or stairs, although he could

---

(W.D. Mo. Mar. 4, 2008).

[8] The ejection fraction measures the amount of blood being pumped by the heart. Walker v. Comm'r of Soc. Sec., No. 6:10-cv-396-Orl-22KRS, 2011 WL 233665, at *5 n.3 (M.D. Fla. Jan. 6, 2011) (citation omitted). Ejection fractions between fifty-five (55) percent and seventy (70) percent are normal. Id.

never balance. (T 2058)  Plaintiff could occasionally stoop, kneel, and crawl. (Id.)  Plaintiff must avoid concentrated exposure to extreme heat and cold, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. (T 2060)

In his opinion, the ALJ explained that he gave little weight to the opinions of Dr. Mulroy because: (1) the task of determining a claimant's RFC is within the province of the ALJ, not a physician; (2) Dr. Mulroy's opinions were inconsistent with his own treatment notes and with other evidence of record; and (3) Dr. Mulroy's findings may have been affected by sympathy for Plaintiff. (T 26-27) The ALJ accorded strong weight to Dr. Desai's opinion because it was consistent with the medical evidence. (T 26)

As a disability determination is reserved to the Commissioner, the ALJ was not required to accept Dr. Mulroy's conclusion that Plaintiff would never be able to work again.  Even so, the ALJ expressly referred in his opinion to Dr. Mulroy's findings about the impact of Plaintiff's conditions on his ability to work. (T 20)  This demonstrates that the ALJ considered Dr. Mulroy's opinions, although he ultimately determined that they were not supported by the record. (T 26-27)   As such, the ALJ did not err in according little weight to Dr. Mulroy's opinion that Plaintiff's conditions prevented him from working.[9]

The ALJ also articulated good cause for assigning less weight to Dr. Mulroy's opinions,

---

[9] Plaintiff's passing claim that Dr. Desai lacked information is without merit. (Dkt. 13 at 14) Specifically, Plaintiff contends that Dr. Desai needed "the benefit" of Dr. Mulroy's Multiple Impairment Questionnaire in conducting her review.  Yet the questionnaire does not contain new diagnostic or objective medical information and only summarizes Dr. Mulroy's conclusions about the impact of Plaintiff's conditions on his ability to work. (See T 2175-82)  As stated above, because it is the Commissioner's responsibility to determine disability, Dr. Mulroy's findings in this regard are not dispositive.  As Plaintiff does not identify any other evidence that may have impacted Dr. Desai's review, this argument is not persuasive. In any case, the record was well-developed when Dr. Desai carried out her assessment, as evidenced by her detailed description of Plaintiff's medical history. (See T 2057-58, 2063)

including inconsistencies within Dr. Mulroy's own treatment notes and with other evidence of record. (T 26)  In July 2008, Dr. Mulroy indicated that Plaintiff's condition could improve such that Plaintiff could lift more than twenty (20) pounds regularly within eighteen (18) to twenty-four (24) months. (T 428) The ALJ found that this statement undermined the severe sitting, standing, and walking restrictions that Dr. Mulroy later assigned to Plaintiff.  (T 26, 2177)

Moreover, the ALJ noted that Dr. Mulroy's findings were inconsistent with other treatment notes, including an August 28, 2008 examination by endocrinologist Robert C. Brickner, M.D. ("Dr. Brickner") in which the physician noted that Plaintiff exhibited no muscle weakness or complaints and no shortness of breath. (T 26, 1458)  Dr. Mulroy's limitations were also inconsistent with the conclusions of neurologist Donald V. Graham, D.O. ("Dr. Graham"), who reviewed MRIs of Plaintiff's lumbar and cervical spines on July 2, 2009.  (T 26, 2171)  Dr. Graham found the lumbar spine unremarkable, although there were mild degenerative changes throughout the cervical spine that resulted in mild to moderate stenosis. (T 2171)  He recommended conservative treatment including physical therapy and pain management. (Id.)  Notably, Dr. Graham conducted his review roughly two weeks before Dr. Mulroy filled out the Multiple Impairment Questionnaire imposing severe restrictions on Plaintiff.[10]  Both physicians referred to a May 27, 2009 MRI of Plaintiff's cervical spine in making their conclusions. (T 2171, 2175)   As the physicians were relying in part on the same information, the ALJ found that Dr. Mulroy's more restrictive findings were inconsistent with Dr. Graham's observations and recommendation for conservative treatment.  (T 26)

Although Plaintiff contends that the ALJ erred by finding that conservative treatment also

_____

[10] Dr. Graham's consultation was on July 2, 2009 (T 2171), and Dr. Mulroy completed the Multiple Impairment Questionnaire on July 14, 2009 (T 2182).

undermined Dr. Mulroy's opinions (T 26), an ALJ is permitted to consider the nature of treatment in other contexts, such as when evaluating a claimant's credibility.   See 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).     It was not error for the ALJ to rely, in part, on the conservative treatment provided by Dr. Mulroy.

Additionally, while the ALJ opined that Dr. Mulroy might have been moved by sympathy for Plaintiff, he acknowledged that such a motive would be "difficult to confirm."  (T 27)  This was only one of a number of reasons the ALJ cited in rejecting Dr. Mulroy's findings.  That is not reversible error.  See Kelley v. Comm'r of Soc. Sec., 401 F. App'x 403, 407 n.6 (11th Cir. 2010) (per curiam) (unpublished) (finding no error where ALJ commented on a physician's apparent sympathy because the ALJ ultimately discounted the physician's opinion for lacking support in the record and being "inconsistent with other evidence").

Plaintiff also contends the ALJ should have considered certain factors that are relevant in assessing a treating physician's relationship with a patient, including the length of the relationship and the extent of interaction. See 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6) (enumerating factors).   However, the ALJ is not required to expressly address each factor in evaluating a physician's opinion.  Lawton, 431 F. App'x at 833.  Instead, the ALJ must show good cause for rejecting the opinion of a treating physician. Id. (citation omitted).  Here, the ALJ discussed inconsistencies between Dr. Mulroy's opinions and his own treatment notes, as well as inconsistencies with other evidence of record. (T 26-27)  Moreover, the ALJ stated that he evaluated the opinion evidence in accordance with the regulations, thereby acknowledging that he considered the factors relevant to assessing medical source opinions. (T 23)

Based on the foregoing, the ALJ clearly stated his reasons for giving less credence to Dr.

11

Mulroy's opinions and articulated good cause.  The ALJ was entitled to rely on Dr. Desai's findings as a non-examining physician whose conclusions were supported by the record and consistent with the underlying clinical findings of the treating and examining physicians. See Flowers, 441 F. App'x at 742-43.  Plaintiff is not entitled to relief on this issue.

**B.**      Plaintiff claims that the ALJ did not appropriately assess the credibility of his subjective complaints because he applied the wrong legal standard and also erroneously concluded that Plaintiff's musculoskeletal condition had not worsened since 2005.  Additionally, Plaintiff contends the ALJ erred by focusing on his attempts to find work and placing too much emphasis on his daily activities.

Subjective complaints are evaluated according to a three-part "pain standard" that is used when a claimant attempts to establish disability through testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)(per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicitly and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam).  A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436,

1441 (11th Cir. 1997).   However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).

Plaintiff testified that he last worked in 2008 as a security guard and received unemployment benefits for a period of time after he stopped working. (T 43)  He later held several temporary jobs, but left them after short periods of time because he was unable to do any heavy lifting. (T 45)

Plaintiff explained that he experiences pain in his back and knees from arthritis, throbbing lower back pain that radiates into his legs, and pain in his neck and shoulders. (T 60-62) He stated that his neck pain causes headaches every day and his medication causes him to sleep and get confused. (T 60-61)  In addition, Plaintiff testified that he suffered three heart attacks and two strokes and that he struggles with anger issues and depression. (T 48-49)  Relying on a cane to stand or walk, Plaintiff stated that he can walk only 200 to 300 feet before tiring and that he can lift nothing heavier than a gallon of milk. (T 52, 54, 62)  Plaintiff further explained that he spends his days reading, using a computer, and watching television. (T 55) He is unable to do household chores, but occasionally mows the lawn. (T 59)

The ALJ stated that while Plaintiff's conditions could reasonably be expected to cause his alleged symptoms, Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they conflicted with his RFC. (T 24) The ALJ then provided a detailed explanation for the basis of his credibility determination. (T 24-26)

As an initial matter, Plaintiff contends that the ALJ applied the wrong legal standard because the ALJ used "boilerplate language" that suggests he compared Plaintiff's testimony to the RFC and

not to the evidence of record as required. (Dkt. 13 at 18)[11]   However, the Eleventh Circuit has explained that the ALJ's credibility determination does not have to include any "particular phrases or formulations" as long as it provides enough explanation for the court "to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citation and internal quotation marks omitted).   See also Rivera-Gonzalez v. Astrue, No. 8:11–CV–172–T–30EAJ, 2012 WL 2912651, at *1 (M.D. Fla. July 16, 2012) (adopting report and recommendation that found no error where ALJ used boilerplate language but based credibility determination on inconsistencies between Plaintiff's testimony and the medical record).   As the ALJ's opinion includes a lengthy analysis of Plaintiff's credibility with sufficient information to explain why he did not fully credit Plaintiff's allegations, this argument is without merit.

The ALJ observed that Plaintiff had been complaining of back pain since 2005, yet the discomfort had not prevented him from working prior to his onset date of January 2008.  (T 24) Finding nothing in the record to suggest that Plaintiff's back condition had worsened since 2005, the ALJ stated that Plaintiff's back impairment should "not currently prevent work." (T 25)   In challenging this conclusion, Plaintiff points out that he was involved in a high-speed motor vehicle accident on August 22, 2007, which exacerbated his pain. (Dkt. 13 at 19; T 548-51)

However, treatment notes after this incident do not support Plaintiff's suggestion that the accident permanently aggravated his back condition. As the ALJ observed, Dr. Mulroy indicated in

---

[11] In raising this issue, Plaintiff notes that the Seventh Circuit has questioned the usefulness of boilerplate language in an ALJ's credibility determination. See Bjornson v. Astrue, 671 F.3d 640, 645-46 (7th Cir. 2012) However, the Seventh Circuit has also found the use of boilerplate language harmless when "the ALJ has otherwise explained his conclusion adequately." Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012).

July 2008 that Plaintiff's ability to lift was going to improve in time. (T 24, 428) Additionally, Plaintiff was told he could return to work two days after the accident (T 550), and Plaintiff reported he was "doing better" at a follow-up visit in November 2007, although he continued to have "sporadic pain" (T 770).

The ALJ also referred to Dr. Graham's review of Plaintiff's MRIs in July 2009 which indicated nothing remarkable in the lumbar spine and only mild degenerative changes in Plaintiff's cervical spine, resulting in a recommendation for physical therapy and pain management in lieu of surgery.  (T 25)  As the ALJ is permitted to consider the type of treatment in evaluating a claimant's credibility, the ALJ did not err in noting that the conservative and "essentially routine" nature of Plaintiff's treatment suggested that the impact of Plaintiff's impairments was not as great as he alleged.  (Id.) See 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).

In addition, the ALJ found little support in the record for Plaintiff's claims that his heart was damaged by coronary artery disease,  he suffered several strokes and heart attacks, and his mental health issues affected his ability to maintain work.  (T 25-26, 48-50)  Plaintiff was hospitalized in 2008 due to breathing problems, but denied any history of myocardial infarction. (T 1140)  Also, tests repeatedly showed that Plaintiff's ejection fraction was within the normal range of fifty-five (55) percent to seventy (70) percent. (T 480, 1163, 2050)  As to his anger management issues and depression, Plaintiff explained in a February 2009 psychiatric consultation that his mental health problems were "nothing super serious" and associated his depression with his inability to find employment.  (T 1763)  Treatment notes reflect that Plaintiff was appropriately dressed and groomed, made good eye contact, and was pleasant and cooperative. (T 26, 1764) Additionally, an examining psychologist noted in December 2008 that Plaintiff had not received mental health

treatment in many years. (T 1404)   As such, the ALJ did not err in finding that the record did not fully support Plaintiff's claims concerning the severity of these problems.

Moreover, the ALJ explained that Plaintiff's credibility was undermined by his ongoing efforts to obtain work and by daily activities. (T 25)  The ALJ observed that Plaintiff appeared to have left his job in 2008 for reasons unrelated to his medical condition[12] and continued to look for work, although he was frustrated with the job market. (Id.)  The ALJ recounted Plaintiff's testimony that he worked at some temporary jobs, but had to stop because he was unable to do heavy lifting. (Id.)  Overall, the ALJ stated that Plaintiff's ongoing search for work, though unsuccessful, implied that Plaintiff "may have overstated the severity of his impairments at [the] hearing." (Id.)

Likewise, the ALJ found inconsistencies in Plaintiff's testimony, noting that he claimed he could walk only short distances, but he was able to mow the lawn on a good day. (T 25, 59)  Additionally, while Plaintiff complained of fatigue and confusion from his medications, he also stated that he was able to read and use the computer, which suggested to the ALJ that Plaintiff could maintain concentration. (T 25, 55-56)

Plaintiff claims the ALJ's findings were in error because Plaintiff's work attempts were brief and unsuccessful.  He also asserts that his daily activities do not correlate with an ability to engage in sustained work-related activities.[13]   However, the ALJ did not find that Plaintiff was not disabled due to his work attempts or daily activities.  Instead, these observations were two of the reasons

---

[12] Plaintiff testified that he was "virtually forced . . . out" of his job in 2008 due to a combination of medical problems and a dispute with his employer regarding overtime wages. (T 44)

[13] Plaintiff also faults the ALJ for referring to his receipt of unemployment compensation as a basis for finding that Plaintiff was not credible, but the Court can find no reference to unemployment compensation in the ALJ's opinion, although the ALJ did question Plaintiff about unemployment benefits at the hearing. (T 43)

given to support the ALJ's finding that Plaintiff was not fully credible.  In referring to Plaintiff's work attempts, the ALJ acknowledged that Plaintiff stopped heavy lifting jobs because he was unable to do the work.  Additionally, the ALJ is permitted to consider daily activities in evaluating a claimant's credibility.  Hoffman, 295 F. App'x at 219 (citations omitted).  The ALJ put these findings in context by explaining that they "may not be the result of a conscious intention to mislead," but simply "suggest that the information provided by the claimant . . . may not be entirely reliable." (T 25)

Based on the foregoing, the ALJ's credibility determination is supported by substantial evidence, including Plaintiff's work attempts, daily activities, and lack of support in the record for the severity of his allegations.  The ALJ did not err on this issue.

**C.**  Plaintiff argues that the ALJ did not analyze the impact of Plaintiff's obesity on his other impairments in accordance with Social Security Ruling 02-1p ("SSR 02-1p").  In particular, Plaintiff faults the ALJ for failing to evaluate how obesity affected  Plaintiff's musculoskeletal conditions.

According to SSR 02-1p, "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally the result of a combination of factors (e.g., genetic, environmental, and behavioral)." SSR 02-1p, 2000 WL 628049 (Sept. 12, 2002).  Further, "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  Id.  In a case involving an obese claimant, the ALJ should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." Id.

Noting that Plaintiff weighed 273 pounds and stood 5'8" tall, the ALJ found Plaintiff's

obesity to be a severe impairment and expressly stated that he considered "the exacerbating effects of the claimant's obesity" in determining his RFC assessment. (T 18, 27) The ALJ also stated that he evaluated Plaintiff's impairments in combination, thereby acknowledging that he considered how obesity affected Plaintiff's arthritis, disc disease, and other musculoskeletal impairments.  (T 22)[14] While the ALJ did not explicitly cite SSR 02-1p in his opinion, these references to obesity and its "exacerbating effects" show that the ALJ appropriately considered the condition.

Moreover, Plaintiff does not explain how his obesity impacts his ability to work in a manner that is not already accommodated by his RFC assessment, which requires Plaintiff to be able to use a handheld assistive device during standing or walking and includes postural limitations such as never climbing ladders, ropes, or scaffolds.  (T 23)  In any case, it would not be error even if the ALJ had failed to address SSR 02-1p, as it is well established that agency rulings do not have the force and effect of law.  See Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (per curiam) (unpublished) (citation omitted).

**D.**     Plaintiff also contends that the ALJ's hypothetical to the VE failed to comprise all of his limitations, including his deficiencies in social functioning.

In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question to the VE that includes all of a claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted).  However, the ALJ is required to include only limitations that the ALJ finds supported by the evidence. See Crawford, 363 F.3d at 1161. The "mere existence of [an] impairment[] does not reveal the extent" to which it limits a claimant's ability to

---

[14] See generally Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (per curiam) (citation omitted) (holding that the ALJ considered a claimant's impairments in combination because the opinion stated that the claimant did not have "an impairment or combination of impairments" that met a listing).

work.  Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) (per curiam) (citation omitted).

The RFC describes the most a claimant can do in a work setting despite limitations resulting from the claimant's impairments.  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).   It is based on consideration of the relevant medical and other evidence in the record. Id.  "The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor."  Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (per curium) (unpublished).

Plaintiff's argument is based mainly on his contention that the ALJ should have incorporated Dr. Mulroy's limitations in his RFC assessment.  But as already discussed, substantial evidence supports the ALJ's decision to accord less weight to Dr. Mulroy's opinions while assigning greater weight to the opinion of Dr. Desai.   The ALJ appropriately included restrictions in the RFC that were supported by the evidence.  Additionally, because the ALJ posed a complete hypothetical to the VE at the hearing,[15] the VE's testimony constitutes substantial evidence that Plaintiff can perform jobs such as a cashier, office helper, or survey worker. (T 28, 77-78)

Plaintiff also asserts that the ALJ should have addressed his "moderate restrictions in social

---

[15] The ALJ instructed the VE to:

> assume a person the claimant's age, education, and work experience who can lift up to twenty pounds occasionally, lift and carry ten pounds frequently; light work as defined by the regulations; stand or walk for approximately six hours per eight-hour workday; and sit for approximately six hours per eight-hour workday, normal breaks; frequent on ramps and stairs; never on ladders, ropes, scaffolds; occasional stooping, kneeling, and crawling; frequent crouching; limit to jobs that can be performed while using a handheld assistive device during standing or walking . . . avoid concentrated exposure to extreme cold; avoid concentrated exposure to extreme heat; avoid concentrated exposure to humidity; avoid concentrated exposure to excessive vibration; avoid concentrated exposure to irritants, such as fumes, odors, dust, and gases; and avoid concentrated exposure to hazards . . . [and] limited to simple, routine and repetitive tasks.

(T 76-77)

functioning" in the RFC. (Dkt. 13 at 22)  On this point, Plaintiff is referring to the ALJ's evaluation of his mental impairments under the criteria of listing 12.04. (T 22-23) The ALJ found that Plaintiff did not meet the criteria because he had only mild difficulties in activities of daily living, social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (T 22)

Plaintiff mistakenly equates moderate difficulties in social functioning with the ALJ's opinion that Plaintiff had "mild difficulties in *moderate* social functioning." (<u>Id.</u> (emphasis added)) As the Commissioner points out, this appears to be nothing more than a typographical error. (Dkt. 14 at 19)  The ALJ explained in his opinion that a state agency psychologist evaluated Plaintiff in December 2008 and found him capable of presenting for work with good grooming and hygiene. (T 21, 1404-06)  The psychologist also found that Plaintiff had a cooperative attitude and "should be able to develop and sustain smooth relationships with others in a work setting." (T 21) In addition, the ALJ discussed a January 2009 review by a non-examining state agency psychologist who opined that Plaintiff had no difficulties in maintaining social functioning. (T 21, 2074)

Given the ALJ's reference to these findings, it is apparent that he found Plaintiff to have mild difficulties in social functioning, despite the inadvertent use of the word "moderate" later in the sentence.  Plaintiff's argument to the contrary is unpersuasive.  The ALJ did not err in relying on the VE's testimony.

### III. Conclusion

For the foregoing reasons, the ALJ's decision is supported by substantial evidence and the proper legal principles.  Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     the decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with

each party to bear its own costs and expenses; and

(2)     the Clerk of Court enter final judgment in favor of Defendant consistent with 42

U.S.C. §§ 405(g) and 1383(c)(3).

**Date: July 26, 2013**

ELIZABETH A JENKINS
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations contained

in this report within fourteen (14) days from the date of this service shall bar an aggrieved party

from attacking the factual findings on appeal.  <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge